UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:                                                     Case No. 11-11434

      Eagle Bridge Machine & Tool, Inc.,      Chapter 11

                Debtor.

---

## MOTION OF DEBTOR-IN-POSSESSION FOR AN INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND (II) PROVIDING ADEQUATE PROTECTION FOR SECURED CREDITOR PEOPLE'S BANK AND (III) GRANTING CERTAIN RELATED RELIEF

TO:    HONORABLE ROBERT E. LITTLEFIELD, JR.
        CHIEF U.S. BANKRUPTCY JUDGE

Eagle Bridge Machine & Tool, Inc. ("EBM" or "Debtor" or "Debtor-in-Possession"), by

and through its undersigned counsel, McNamee, Lochner, Titus & Williams, P.C., Peter A.

Pastore, Esq., of counsel, hereby moves (the "Motion") the court for entry of an interim

order and establishing a date for a final hearing on use of cash collateral, the proposed form

of which is annexed hereto as Exhibit A, (i) authorizing EBM's continued use of cash

collateral subject to the security interest of People's United Bank ("People's Bank") in

accordance with EBM's prepetition business practice, (ii) providing People's Bank with a

fully perfected roll-over lien post petition on all cash collateral generated by EBM, (iii)

authorizing EBM to terminate its Purchase and Sale Agreement with Amerisource Funding,

Inc. ("Amerisource"), (iv) authorizing EBM to establish its debtor-in-possession accounts with

People's Bank provided People's Bank is in compliance with the investment and deposit

requirements of section 345(b) of the United States Code, 11 U.S.C. §§ 101-1532 (as

amended, the "Bankruptcy Code"), (v) authorizing the payment of the United States

Trustee's fees free and clear of the security interest of People's Bank in cash collateral and

(vi) establishing a date for a final hearing. In support of the Motion, Debtor submits the Declaration of John E. Soron in Support of Chapter 11 Petition and First Day Motions (the "First Day Declarations"). In further support of the Motion, EBM respectfully represent as follows:

## I. General Background

1.     On May 4, 2011 (the "Petition Date") EBM filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The debtor is operating its business and managing its property as debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made and no statutory committee has yet been appointed or designated.

2. Eagle Bridge Machine & Tool, Inc. is a precision, production machining business based in Eagle Bridge, New York. The company specializes in machining medium sized to heavy metal castings used in a variety of industries, including mass transportation rail trains and cars, defense, oil and gas drilling and other commercial markets. Representative products include bearing housings, rail truck components, brake brackets, rotors, suspension housings, drill elevators, and other components. EBM will manufacture prototypes and special production parts, but it typically undertakes projects requiring production runs of 50 to 50,000 parts. While EBM serves a variety of industries, its business has evolved to strongly emphasize machining of critical, heavy-duty (steel, iron or ductile) undercarriage parts for the mass transit industry – light and heavy duty trains, cars and subways. The company works with original equipment manufacturers and produces replacement parts for numerous rail customers and transit systems. Currently EBM employs seventeen (17)

people. Declining sale volumes and unforeseen project delays have caused a deterioration of EBM's financial performance.

## A. EBM's Secured Debt

3.      Debtor financed its prepetition business activities with various debt instruments and security agreements with People's Bank which bank holds first liens and security interests in all of the Debtor's assets as set forth below:

(a)      Term Note, No. 114138720-10, dated December 30, 2008 in the original amount of $1,219,806.00 ("Term Note"). As of March 28, 2011, said Term Note has a principal balance of $797,325.04 and accrued unpaid interest of $20,596.08 and accrued unpaid late fees of $7,121.70, for a total due of $825,042.26, and a per diem interest of $181.39.

(b)      Matured Term Note, No. 1667602-10, dated December 30, 2008 in the original principal amount of $500,000.00 ("Matured Term Note"). As of March 28, 2011, said Matured Term Note has a principal balance of $284,184.38, and accrued interest of $4,543.10, for a total due of $288,727.48 and a per diem interest of $65.13.

(c)      Mortgage Note, No. 4229562237-10, dated September 28, 1999 and replaced by a renewal note dated February 3, 2006 in the principal amount of $379,475.37 ("Mortgage Note"). As of March 28, 2011, said Mortgage Note has a principal balance of $185,931.62 and accrued interest of $820.00, for a total due of $187,402.41 and a per diem interest of $27.12.

(d)      Mortgage dated September 29, 1999 between EBM and People's Bank's predecessor Vermont National Bank.

(e)    A Security Agreement dated December 30, 2008 and various predecessor security agreements between EBM and People's Bank).

(f)    Various UCC-1 filed financing statements.

4.    In December, 2010, in an effort to generate a ready availability of cash, EBM entered into a Purchase and Sale Agreement with Amerisource whereby Amerisource factored certain accounts receivable of EBM under certain terms and conditions. On the Petition Date, EBM has no outstanding obligations to Amerisource and, as of the Petition Date, Amerisource has not purchased any of EBM's outstanding accounts receivable.

5.    In March of 2011, People's Bank exercised a set-off against EBM's bank account, in the sum of $54,818.61 ("Set-Off Funds") maintained at People's Bank. Thereafter, EBM and People's Bank engaged in intensive discussions and negotiations regarding the restoration of the Set-Off Funds to EBM's bank account. Those discussions culminated in a prepetition cash collateral agreement ("Prepetition Cash Collateral Agreement") which EBM and People's Bank agreed would govern their relationship for the period before the Petition Date and post petition, subject only to this Court's approval. (A copy of said Prepetition Cash Collateral Agreement is attached hereto and made a part hereof.) An overriding and compelling factor in EBM's ability to reach a resolution with People's Bank was EBM's proposal to sell its business to a third party and provide People's Bank with a significant payment on EBM's outstanding debt.

## II.   Jurisdiction, Venue and Predicates for Relief

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) (M), and (O).

7.    The predicate for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III. **Relief Requested**

8.    By this Motion, Debtor requests the entry of an interim order (i) authorizing Debtor's prepetition ordinary business practices and continued use of cash collateral (ii) granting People's Bank with a roll-over and replacement lien on all of Debtor's cash, and such lien shall be of the same extent and priority as People's Bank's interest, as of the Petition Date, in all cash subsequently used by debtor, (iii) authorizing Debtor to terminate its Purchase and Sale Agreement with Amerisource, (iv) authorizing debtor to establish its debtor in possession accounts at People's Bank, (v) authorizing the payment of the United States Trustee's fees free and clear of the security interest of People's Bank in cash collateral, and (vi) establishing a return date for a final hearing on use of cash collateral.

## IV. **Basis for the Relief Requested**

### A. Continuing the Debtor's Use of the Cash Collateral is in the best interests of the Debtor and its Estate

9.    Debtor seeks authorization to continue its use of cash consistent with its prepetition management practices and operations.    Continued use of cash collateral provides significant benefits to the Debtor and its Estate: (a) permits Debtor's business operation to survive pending consummation of a proposed sale (b) permits fulfillment of outstanding orders and (c) keeps EBM's work force employed.

### B. People's Bank should be granted Roll-Over Lien as Adequate Protection

10.    Debtor's use of cash collateral should be permitted but not at the expense of People's Bank's secured claim.    Accordingly, People's Bank should be allowed a roll-over

lien in accordance with the Cash Collateral Agreement reached between EBM and People's Bank.

11.     Under §363 of the Bankruptcy Code, a debtor-in-possession "may not use, sell, or lease cash collateral... unless (A) each entity that has an interest in such cash collateral consents" [11 USC §363(C)(2)(A)].   In the instant case, People's Bank has provided its express consent to EBM's use of cash collateral for its ordinary and customary expenses of operation (See Cash Collateral Agreement).

### V. Approval of use of Cash Collateral on an Interim Basis Is Necessary to Prevent immediate and Irreparable Harm

12.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced until earlier than fourteen (14) days after the service of such motion.  *See* Fed. R. Bankr. P. 4001(b)(2).   Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing.  *See id.*

13.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtors to use the Cash Collateral of the Senior Lenders to (a) maintain and finance the Debtor's efforts to sell under chapter 11 of the Bankruptcy Code, and (b) avoid immediate and irreparable harm and prejudice to the Debtor's estates and all parties in interest, and (ii) schedule the Final Hearing on the relief requested herein.

14.     Absent authorization from the Court to use the Cash Collateral on an interim basis pending the Final Hearing, the Debtor will be immediately and irreparably harmed. As set forth above and in the First Day Declarations, the Debtor's ability to preserve value

for the benefit of all constituents is inextricably tied to a sale to a third party. Without the immediate liquidity provided by the use of the Cash Collateral, the Debtor will suffer a precipitous loss of value to the detriment of all parties in interest that constitutes an immediate and irreparable harm to the Debtor and its estate, with disastrous consequences for the Debtor, its estate and its creditors. The Interim Order seeks approval to use Cash Collateral only in the amount necessary to sustain the Debtors operations prior to the Final Hearing.

## VI. <u>Request for A Final Hearing</u>

15.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court set a date that is no long than fourteen (14) days after the entry of the Interim Order as a Final Hearing for consideration of entry of the Final Order.

16.     The Debtor requests that they be authorized to serve a copy of the Interim Order, which fixes the date and time for the filing of objections, if any, by first class mail upon the Notice Parties (defined below) within seven (7) business days of the entry of the Interim Order on the Court's docket. The Debtor further requests that the Court consider such notice of the Final Hearing to be sufficient notice under the Bankruptcy Rules and Local Rules.

## VII. <u>Notice</u>

18.     Notice of this Motion has been provided to: (a) the office of the United States Trustee for the Northern District of New York; (b) counsel to People's Bank, Cooper, Erving & Savage, LLP, Attn: Michael A. Kornstein, Esq.; (c) Amerisource and (d) creditors holding the twenty (20) largest unsecured claims against the Debtor ("Noticed Parties"). In light of the nature of the relief requested herein and the potential harm to the Debtor's estate if the

relief requested herein is not granted, the Debtor respectfully submits that no further notice need be provided.

## VIII. **No Prior Request**

19.     No prior motion for the relief requested herein has been made to this or any other court.

## IX. **Conclusion**

17.     For the reasons set forth herein and in the First Day Declarations, Debtor respectfully submits that it is appropriate for the Court to grant the relief requested by this Motion.

WHEREFORE, Debtor respectfully request that the Court (a) enter an interim order substantially in form annexed hereto as Exhibit A granting the relief requested herein and (b) grant to the Debtor such other and further relief as the Court may deem just and proper.

Dated:  Albany, New York
      May 4, 2011

              Respectfully submitted

              Peter A. Pastore, Esq.
              McNamee, Lochner, Titus & Williams, P.C.
              677 Broadway
              Albany, New York 12207
              (518) 447-3200

              Proposed Attorneys for Debtor-in-Possession

# Exhibit A

Exhibit A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| In re: | Case No. _____ |
| | |
| Eagle Bridge Machine & Tool, Inc., | Chapter 11 |
| | |
| Debtor. | |

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION FOR SECURED CREDITOR PEOPLE'S BANK AND (III) GRANTING CERTAIN RELATED RELIEF

TO:  HONORABLE ROBERT E. LITTLEFIELD, JR.
     CHIEF U.S. BANKRUPTCY JUDGE

Upon consideration of the motion (the "Motion") of the debtor-in-possession for entry of an interim order pursuant to section 105(a), 363(b), 363(c), and Bankruptcy Rule 4001, (i) authorizing EBM's continued use of cash collateral subject to the secured claim of People's United Bank ("People's Bank") in accordance with EBM's prepetition practices, (ii) providing People's Bank with a fully perfected roll-over lien on all cash collateral generated by EBM, (iii) authorizing EBM to establish its debtor-in-possession accounts with People's Bank and (iv) establishing a date for a Final Hearing; and upon consideration of the Declaration of John E. Soron in Support of the Chapter 11 Petition and First Day Motions (the "First Day Declarations"); and the Court finding that: (a) its has jurisdiction over the issues raised in the Motion pursuant to 28 U.S.C. §1334(b); (b) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); (c) venue of the Debtor's case and the Motion is proper pursuant to 28 U.S.C. §1408 and 1409; (d) the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; (e) proper and adequate notice of the

Motion and the hearing thereon has been given and no other or further notice is necessary; and (f) good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion, the First Day Declarations and all the proceedings had before the Court in connection with the Motion. Therefore,

IT IS HEREBY ORDERED THAT:

1.     The Motion shall be, and hereby is, GRANTED on an interim basis on the terms set forth herein, subject to becoming a Final Order.

2.     The provisions of this interim order (the "Interim Order") shall be and hereby are effective, *nunc pro tunc*, to the date of the commencement of Debtor's chapter 11 case (the "Petition Date").

3.     The Debtor shall be, and hereby is, authorized to continue to use and manage its cash pursuant to the cash collateral agreement attached to the Motion and is hereby incorporated herein by a copy thereof attached hereto.

4.     As adequate protection for Debtor's use of cash collateral, People's Bank shall be, and hereby is, granted a roll over lien and security interest in all post-petition cash collateral and all other assets of the Debtor received after the Petition Date of the kind and nature specified in the security agreements executed by Debtor in favor of People's Bank prepetition. However, Debtor shall be authorized to pay the United States Trustee's fees free and clear of the security interest of People's Bank in cash collateral.

5.     Debtor shall be, and hereby is, authorized to terminate its Purchase and Sale Agreement with Amerisource Funding, Inc. and any UCC-1 Financing Statements filed in connection therewith.

6.     Debtor shall be, and hereby is, authorized to continue with its bank accounts at People's Bank and shall designate same as debtor-in-possession accounts.

7.     The final hearing on the Motion (the "Final Hearing") shall be on _____ __, 2011 at __:__ __ __.m. or as soon thereafter as counsel may be heard.

8.     Within five (5) business days after the entry of this Interim Order on the Court's docket, the Debtor shall serve a copy of the Motion and this Interim Order upon (a) the Office of the United States Trustee; (b) counsel to People's Bank; (c) Amerisource Funding, Inc.; (d) the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate as identified in the Debtor's chapter 11 petition; and (e) all parties that have filed a notice of appearance or have requested service in this chapter 11 case. Service of this Interim Order with a copy of the Motion as provided herein shall be deemed good and sufficient service of the Motion and the Final Hearing.

9.     Any responses or objections to granting the relief requested in the Motion on a final basis shall be filed with the Clerk of the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system and, by all other parties by mail and served so that they are received no later than seven (7) business days prior to the Final Hearing (the "Objection Deadline") (with a courtesy copy delivered directly to the Chambers of the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Court, John T. Foley Courthouse, Albany, New York 12207): by (i) attorneys for the Debtor, McNamee, Lochner, Titus & Williams, P.C., 677 Broadway, Albany, New York 12207, Attn: Peter A. Pastore, Esq.,; (ii) the Office of the United States Trustee for the Northern District of New York, 74 Chapel Street, Suite 200, Albany, New York 12207; (iii) counsel for People's Bank, Cooper,

Erving & Savage LLP, 39 North Pearl Street, Albany, New York 12207, Attn: Michael Kornstein, Esq.; and (iv) counsel for the statutory committee of unsecured creditors, if appointed, so as to be actually received by the Objection Deadline.

10.    Nothing in this Interim Order shall preclude a party in interest from challenging the security interests of People's Bank.


Dated:  Albany, New York
        May __, 2011


                                          _____
                                          Honorable Robert E. Littlefield, Jr.
                                          Chief United States Bankruptcy Judge

## CASH COLLATERAL AGREEMENT

THIS CASH COLLATERAL AGREEMENT is made this 26th day of April, 2011, by and between EAGLE BRIDGE MACHINE & TOOL, INC. ("EBM"), by and through its counsel, McNamee, Lochner, Titus & Williams, P.C., Peter A. Pastore, Esq. of Counsel, and PEOPLE'S UNITED BANK f/k/a Chittenden Bank ("People's Bank") by and through its counsel, Cooper, Erving & Savage, LLP, Michael A. Kornstein, Esq. of Counsel.

WHEREAS, People's Bank is a secured creditor of EBM pursuant to the following:

(a)     Term Note, No. 114138720-10, dated December 30, 2008 in the original amount of $1,219,806.00 ("Term Note"). As of March 28, 2011, said Term Note has a principal balance of $797,325.04 and accrued unpaid interest of $20,596.08 and accrued unpaid late fees of $7,121.70, for a total due of $825,042.26, and a per diem interest of $181.39.

(b)     Matured Term Note, No. 1667602-10, dated December 30, 2008 in the original principal amount of $500,000.00 ("Matured Term Note"). As of March 28, 2011, said Matured Term Note has a principal balance of $284,184.38, and accrued interest of $4,543.10, for a total due of $288,727.48 and a per diem interest of $65.13.

(c)     Mortgage Note, No. 4229562237-10, dated September 28, 1999 and replaced by a renewal note dated February 3, 2006 in the principal amount of $379,475.37 ("Mortgage Note"). As of March 28, 2011, said Mortgage Note has a principal balance of $185,931.62 and accrued interest of $820.00, for a total due of $187,402.41 and a per diem interest of $27.12.

{M0431442.1}

(d)    Mortgage dated September 29, 1999 between EBM and People's Bank's predecessor Vermont National Bank (the "Mortgage").

(e)    A Security Agreement dated December 30, 2008 and various predecessor security agreements between EBM and People's Bank).

(f)    Various UCC-1 filed financing statements, and

WHEREAS, EBM has executed a Commercial Guaranty dated July 27, 2006 (the "EBM Guaranty") to guarantee the payments of H & B Holding, LLC to People's Bank pursuant to the following:

(a)    Third Party Mortgage Note dated July 27, 2006, between H & B Holding, LLC and People's Bank's predecessor Chittenden Bank having an original principal balance of $300,000.00 ("Third Party Mortgage Note").  As of March 28, 2011, said Third Party Mortgage Note has a principal balance of $243,630.89 and accrued unpaid interest of $434.75 for a total due of $244,065.64; and

(b)    Third Party Mortgage dated July 27, 2006 between H & B Holding, LLC and People's Bank's predecessor Chittenden Bank ("Third Party Mortgage").

WHEREAS, People's Bank is a duly perfected secured party with respect to the above-referenced debts, and

WHEREAS, EBM has experienced a down turn in its business and has experienced financial hardship in meeting its obligation to People's Bank, and

WHEREAS, on or about March 31, 2011, People's Bank set-off against EBM's operating account maintained at People's Bank in the sum of $54,818.61, and

WHEREAS, EBM has considered various reorganization plans or sales of its business to meet its obligations to People's Bank and other creditors, and

WHEREAS, EBM has procured a purchaser for its business and People's Bank has been informed of such purchaser, and

WHEREAS, People's Bank is in favor of EBM's sale of its business to purchaser, and

WHEREAS, People's Bank has agreed to be paid less than its full secured claim, on its non-real estate debt, which secured claim includes principal, accrued interest, fees, penalties and any other sums due under the Term Note and the Matured Term Note. People's Bank has agreed to compromise its claim and to be paid the total sum of $1,000,000.00 in full satisfaction of all amounts due under the Term Note and Matured Term Note. People's Bank shall also provide a carve-out for EBM's counsel for its services in a Chapter 11 case, provided, People's Bank is paid said $1,000,000.00 from the sale and provided EBM files for Chapter 11 relief and seeks immediate approval of said sale by way of a 11 U.S.C. §363 sale, and

WHEREAS, People's Bank has further agreed to release all sums set-off and shall refrain from any further set-offs provided the Chapter 11 petition is filed and a motion for §363 sale is filed therein,

NOW, THEREFORE, in consideration of the foregoing Recitals which are incorporated herein by reference and made a substantive part of this Cash Collateral Agreement, the mutual covenants, conditions and promises of the Parties set forth herein below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, EBM and People's Bank hereby agree as follows:

1.	EBM shall file for protection under Chapter 11 of Title 11 in the Northern District of New York no later than April 26, 2011 ("Petition Date").

2.	This Cash Collateral Agreement shall be incorporated into a cash collateral agreement within the context of the Chapter 11 case, subject only to Court approval.

3.	Within five (5) business days of filing of the Petition Date, EBM shall file a motion for a sale of its business assets pursuant to 11 U.S.C. §363 which provides for a purchase price in the sum of $1,200,000.00 exclusive of the real estate assets (the "Asset Sale").  In the event the purchase price of the Asset Sale exceeds $1,200,000.00, People's Bank shall be paid fifty percent (50%) of such excess amount until the total sums due under the Term Note and the Matured Term Note have been paid in full.

4.	The terms of the Asset Sale shall include a payment of $1,000,000.00 to People's Bank in full satisfaction of the Term Note and Matured Term Note.

5.	Pursuant to a separate real estate sale to a third party, which shall have common ownership with H&B Holding, LLC ("Buyer Realty") in connection with the Asset Sale, People's Bank shall consent to the transfer of EBM's real property known as 135 State Route 67, Eagle Bridge, New York 12057, pursuant to which Buyer Realty shall assume the Mortgage Note and the continued payment to People's Bank thereunder.  People's Bank shall release EBM from any and all obligations under the Mortgage Note and the Mortgage and consent to the lease of the real property from Buyer Realty to the buyer named in the Asset Sale for a period not to exceed two (2) years on a triple net basis for a monthly rent not to exceed $3,500.00 per month.

6.     In connection with the Asset Sale, People's Bank shall consent to the lease of the real property known as 155 State Route 67, Eagle Bridge, New York 12057 from H&B Holding, LLC to the buyer named in the Asset Sale for a period not to exceed two (2) years on a triple net basis for a monthly rent not to exceed $3,500.00 per month. Additionally, People's Bank shall release EBM from any and all obligations under the EBM Guaranty.

7.     In connection with the leases of 135 State Route 67 and 155 State Route 67, EBM acknowledges and agrees that People's Bank shall be entitled to record an assignment of leases and rents against both properties as a condition of its consent to the leases in Sections 5 and 6 above.

8.     People's Bank is prohibited from any further set-offs against EBM's bank accounts. EBM hereby releases People's Bank of any and all claims relating to People's Bank exercise of its rights of set-off. Further, EBM shall cause its consultant, Stanwich Partners, to provide a release relating to People's Bank exercise of its rights of set-off.

9.     People's Bank shall carve-out from its non-real estate collateral the difference between: (a) the sum of the indebtedness on the Term Note and Matured Note estimated to be the sum of $1,118,452.90, less (b) $1,000,000.00; for payment of EBM's bankruptcy counsel. The parties acknowledge that payment to EBM's bankruptcy counsel remains subject to Bankruptcy Court approval.

10.     People's Bank shall be allowed an unsecured claim for any sums not paid People's Bank from the proceeds of the Asset Sale.

11.     EBM's major client, Bombardier Transportation, shall provide People's Bank with a letter indicating its support of EBM's proposed Asset Sale.

12.     All accounts receivable once cleared through Amerisource Funding, Inc., EBM's factor, shall be deposited into EBM's checking/operating account maintained at People's Bank.  Upon the filing of the Chapter 11 petition, EBM shall open its debtor-in-possession accounts at People's Bank, provided People's Bank is an authorized depository of such funds as per the United States Trustee's office.

13.     EBM shall provide regular financial reports to People's Bank upon request by People's Bank.

14.     .EBM shall provide People's Bank with an executed copy of the asset purchase agreement for the Asset Sale to buyer on the same day said agreement is fully executed.

15.     EBM shall be permitted to make all employee related payments and all payments in the ordinary course of its business to those parties EBM deems necessary, in its sole discretion, to sustain the ongoing viability of EBM pending the sale thereof.  Upon the filing of the Chapter 11 petition, EBM shall be permitted to continue to make such payments.

16.     Upon the filing of the Chapter 11 petition, proceeds from the sale of inventory, if any, collection of accounts and any other sums, cash or cash equivalents received from any source constitute People's Bank cash collateral pursuant to 11 U.S.C. §363 (the "Cash Collateral") and People's Bank is hereby granted a fully perfected rollover lien on cash collateral generated by EBM post petition, *nunc pro tunc* to the Petition Date.

As adequate protection, People's Bank secured claim shall be secured and collateralized by a first lien and security interest on all assets of EBM subject to People's Bank's valid and perfected security interests and liens as may have existed as of the Petition Date, including all property purchased with Cash Collateral. Further, People's Bank is granted a rollover lien on all property of EBM obtained or received after the Petition Date of the kind and nature specified in the various security agreements, Uniform Commercial Code filings and other documents evidencing People's Bank's security interests. It is expressly agreed that no further action or filing under the Uniform Commercial Code or otherwise shall be necessary to perfect the liens created and conveyed to People's Bank herein. Subject to the terms and conditions of this Agreement, EBM may retain possession and control of and may continue to use the Cash Collateral.

17.     EBM acknowledges and agrees that People's Bank shall not be obligated to advance any further sums to EBM under any of its credit facilities including, but not limited to, the Term Note and the Matured Note.

18.     EBM's authority to use Cash Collateral pursuant to this Agreement shall immediately terminate upon the occurrence of the earliest of the following events:

(a)     The conversion of EBM's Chapter 11 case to one under Chapter 7 of the Code without the consummation of the Asset Sale;

(b)     The dismissal of EBM's bankruptcy case without the consummation of the Asset Sale, in which event all liens granted and conveyed herein or pursuant to this Agreement shall remain effective and

continue to be effective notwithstanding such dismissal and shall secure any and all indebtedness owed to People's Bank.

      (c)     Failure of EBM to file a Chapter 11 petition by May 3, 2011.

      (d)     Failure of EBM to file a §363 sale motion by May 10, 2011.

Notwithstanding the foregoing, in the event EBM fails to file a Chapter 11 petition by May 3, 2011, EBM shall assemble and deliver the collateral pledged to People's Bank at the mortgaged premises.

    19.    Each of the Parties represents and warrants that (i) it has read and understands the terms of this Agreement and (ii) it has entered into this Agreement for reasons of its own and not based upon any representations of any other party hereto, except as expressly made herein.

    20.    Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to this Agreement.

    21.    This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by all of the parties. This Agreement may be executed by facsimile or scanned and e-mailed copy and each signature thereto shall be and constitute an original signature, again as if all parties had executed a single original document.

    22.    This Agreement shall be construed and interpreted in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties have caused this Cash Collateral Agreement to
be executed as of the day first above written.

Peter A. Pastore, Esq.
McNamee, Lochner, Titus & Williams, P.C.
Attorneys for Eagle Bride Machine & Tool, Inc.
677 Broadway
Albany, New York 12207
(518) 447-3200

Michael A. Kornstein, Esq.
Cooper, Erving & Savage, LLP
Attorneys for People's United Bank
39 North Pearl Street
Albany, New York 12207-2797
(518) 449-3900