UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:                                        Case No. 11-11434

    Eagle Bridge Machine & Tool, Inc.,        Chapter 11

               Debtor.

---

**DEBTOR'S MOTION FOR ORDERS: (I)(1)  APPROVING FORM OF "STALKING HORSE" ASSET PURCHASE AGREEMENT WITH STRATO TRANSIT COMPONENTS, LLC FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR; (2)  APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (3)  SCHEDULING (a) AN AUCTION SALE AND (b) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (II) AUTHORIZING THE SALE OF SUCH ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (III) AUTHORIZING DEBTOR TO CONSUMMATE ALL TRANSACTIONS RELATED TO THE ABOVE; AND (IV) GRANTING OTHER RELIEF**

Debtor, by and through its undersigned attorneys, hereby submits this Motion (the "Motion") for entry of orders pursuant to Bankruptcy Code §§105(a), 363 and 365 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (i) a procedures order (the "Bidding Procedures Order"), inter alia, (a) approving certain bidding procedures (the "Bidding Procedures") and scheduling a competitive auction (the "Auction") in connection with the sale of substantially all assets of Debtor, excluding Debtor's ownership interest in real estate known as 135 State Route 67, Eagle Bridge, New York Debtor's leasehold interest in real estate known as 155 State Route 67, Eagle Bridge, New York, and the Excluded Assets as that term is defined in the Asset Purchase Agreement dated April 28, 2011 by and between Debtor and Strato Transit Components, LLC (the "APA") (the "Assets"); (b) authorizing Debtor to enter into the APA with Strato Transit Components, LLC ("Strato" or the "Stalking Horse Bidder") in connection therewith; (c) authorizing Debtor to offer certain bid protections to the Stalking Horse Bidder; (d) scheduling a sale hearing (the "Sale Hearing") to consider entry of an order approving the sale of the Assets (the "Sale"), and approving the form and manner of

the notice of the Sale Hearing (the "Sale Notice") (the relief requested in Items (i) (a), (c) and (d) is referred to herein as the "Initial Relief"), and (ii) an approval order (the "Approval Order"), (1) authorizing and approving the Asset Purchase Agreement with the Stalking Horse Bidder or such other entity or person providing a higher or otherwise better offer for the Assets, as approved by this Court at the Sale Hearing, (2) authorizing the Sale free and clear of all liens, claims, encumbrances and other interests, (3) authorizing Debtor to consummate all transactions related to the above, and (4) granting other relief.

In support of the relief requested herein, Debtor respectfully represents as follows:

## FACTUAL BACKGROUND

1.      As described further below, Debtor commenced this case following the lengthy period in which it experienced a significant decline in its business and proved unable to achieve an internal restructuring of its finances and operations.  Based on the condition of the Debtor, it has a severely limited amount of time and funding within which it may attempt to sell the Assets as a going concern in order to maximize the value thereof.

2.      The approval of the Sale of the Assets to the Stalking Horse Bidder in connection with the relief requested herein, represents Debtor's only opportunity for a going concern sale.

3.      Furthermore, Debtor's primary secured creditor, People's Bank, has reached an agreement in principle with Debtor pursuant to that certain cash collateral agreement dated April 28, 2011 (the "Cash Collateral Agreement") regarding the distribution of the net proceeds of the Sale, which distribution provides that the secured claim of People's Bank shall be discounted for the benefit of the estate and its creditors.

4.      Moreover, the Debtor is concerned that given its well documented and on-going financial difficulties that precipitated the filing of this case, any delay in consummating

the Sale of the Assets in an expedited manner will thwart Debtor's efforts to maximize the value of the Assets.

5.     Based on the foregoing, the Sale is in the best interests of Debtor's estate and its creditors and represents a sound exercise of its business judgment to maximize the value of the Assets and hereby requests that this Court grant its approval thereof, as well as the other relief requested herein.

## JURISDICTION

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.  Venue of this case and this Motion in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).   The statutory predicate for the relief requested herein are Bankruptcy Code §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014.

## INTRODUCTION

7.     On May 4, 2011 (the "Petition Date"), Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

8.     Debtor continues to manage its properties and operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§1107 and 1108.   No trustee or examiner has been appointed in this case, nor has any official committee of unsecured creditors been appointed in this case.

9.     Debtor is a precision, production machining business based in Eagle Bridge, New York.  The company specializes in machining medium sized to heavy metal castings used in a variety of industries, including mass transportation rail trains and cars, defense, oil and gas drilling and other commercial markets.

10. As noted above, Debtor experienced a significant decline in its business in 2010 and proved unable to achieve an internal restructuring of its finances and operations.

## SUMMARY OF RELIEF REQUESTED

11. Pursuant to Bankruptcy Code §§105, 363 and 365 and Bankruptcy Rules 202, 604 and 606, Debtor hereby seeks entry of the following orders: (a) in order, substantially in the form annexed hereto as Exhibit A (the "Bidding Procedures Order") granting the Initial Relief, including, among other things: (i) authorizing the Debtor to enter into the Asset Purchase Agreement with Strato Transit Components, LLC, as the Stalking Horse Bidder, in the form annexed hereto as Exhibit B, for the Assets approving the expense reimbursement fee set forth therein; (ii) authorizing and approving certain bidding protections and setting deadlines, requirements and other procedures for the Sale and Auction process in the form annexed hereto as Exhibit C (collectively, and as more fully set forth therein, the "Bidding Procedures"); (iii) scheduling (A) the Auction for the Assets to be held prior to the Sale Hearing; and (B) the Sale Hearing; (iv) establishing the relevant objection deadline; and (v) approving the form and manner of notice of the Sale, the Auction and the Sale Hearing, among other things; and (b) an order, substantially in the form annexed hereto as Exhibit D (the "Approval Order"), among other things: (i) authorizing and approving the Asset Purchase Agreement between the Debtor and the Stalking Horse Bidder (or such other entity or person submitting a higher or otherwise better offer, and purchaser, as approved by this Court at the Sale Hearing); (ii) authorizing and approving the Sale of the Assets pursuant to the Asset Purchase Agreement to the Stalking Horse Bidder or such other entity or person submitting a higher or otherwise better offer, free and clear of all liens, claims, encumbrances and other interests; and (iii) granting other related relief.

## PROPOSED SALE AND RELATED TRANSACTIONS, AND SUPPORT FOR APPROVAL OF THE REQUESTED RELIEF

12.     Pursuant to the terms of the Asset Purchase Agreement, the Stalking Horse Bidder would acquire the Assets consisting of the business assets of Debtor, but excluding its ownership interest in real estate known as 135 State Route 67, Eagle Bridge, New York (the "135 Property"), Debtor's leasehold interest in real estate known as 155 State Route 67, Eagle Bridge, New York (the "155 Property") and the Excluded Assets (as that term is defined in the Asset Purchase Agreement), as of the Closing which include:

(a)     all inventory, stock in trade, work in process, finished goods, repair and replacements parts, labels, packing materials and raw materials, including goods in transit, consigned inventory, inventory sold on approval and rental inventory owned by or in the possession of Debtor at the Closing Date;

(b)     all equipment, including spare parts, machinery, furniture, fixtures, furnishings, materials and supplies, software, tools, vehicles, leasehold improvements, goods, and other tangible personal property owned by Debtor, wherever situated, and used in connection with Debtor's business. Attached hereto as Schedule 1.1(b) is a complete list of all such tangible assets and other personal property, owned by Debtor at the Closing Date;

(c)     to the extent transferable, all Licenses and Permits (as defined in Section 5.11) and certifications owned by Debtor and which relate to the operation of Debtor's business;

(d)     the information systems used by Debtor in connection with its business;

(e)     all of the right, title and interest of Debtor in and to all customers lists, goodwill, customers and marketing data and plans, advertising and display materials, sales literature, promotional material, catalogs, samples, demos and prototypes;

(f)     all of the right, title and interest of Debtor in and to all original books and records relating to Debtor's business, sales order, files, engineering files, studies, surveys, supplier data, pricing and cost information, technical information, purchase orders and commitments, invoices, manufacturing records, research and development records, engineering data and plans, production and testing techniques, formulae, specifications,

designs, drawings, writings and all other files and records owned by Debtor at the Closing Date and related to its business;

(g)     all of the right, title and interest of Debtor in and to all of the Intellectual Property and the Intellectual Property Licenses (as those terms are defined in the Asset Purchase Agreement):

(h)     all of Debtors' rights, claims, defenses, or causes of action, including derivative actions, against third parties in respect of the Acquired Assets arising out of transactions, actions or occurrences prior to the Closing, except all claims and causes of action of Debtor that are Excluded Assets;

(i)     all rights benefiting Debtor under any warranty, express or implied, which relate to the Acquired Assets; and

(j)     the following telephone and facsimile numbers of Debtor: Telephone: 518-686-4541; and Facsimile: 518-686-3125 (collectively the "Assets").

13.     The Asset Purchase Agreement details the Excluded Assets, in addition to the 135 Property and the 155 Property, that the Stalking Horse Bidder will not be acquiring in connection with the Sale, which include:

(a)     all accounts receivable and other rights to receive payment, and any security or collateral relating thereto, in respect of work performed or partially performed or products produced and sold, or committed to be sold by Debtor existing at the Closing Date;

(b)     any interest in actions, causes of action and proceeds therefrom arising out of or relating to any claims under Bankruptcy Code §§ 544-550, inclusive, except such causes of action and proceeds therefrom arising out of or relating to any claims under Bankruptcy Code §§ 544-550 against Strato;

(c)     any cash and cash equivalents existing as of the Closing Date, including, without limitation, checking accounts, bank deposits, investments in "money market" funds, commercial paper funds, certificates of deposit, Treasury bills, in each case including any accrued interest thereon;

(d)     all contracts and leases of Debtor;

(e)     all reimbursement or rebate checks (such as the return of insurance premiums paid by Debtor to its insurer upon Debtor's cancellation of insurance) which are received by Stalking Horse Bidder following the Closing;

(f)     Debtor's minute books, stock books and records, original books of account and records, tax returns and other corporate documents, and Debtor's financial records and employment records; provided, however, that Stalking Horse Bidder shall have reasonable access to all such documents and the right to review and copy such documents from the date hereof through the Closing Date and for as long as Debtor maintains such records, which shall in no event be less than six (6) years from the Closing Date;

(g)     all real property owned by Debtor;

(h)     all of Debtor's insurance policies;

(i)     all rights, claims, defenses or causes of action arising out of or relating to the case of Eagle Bridge Machine & Tool, Inc. v Raymond R. Farrara, Index No.: 1289-09, Supreme Court of the State of New York, Albany County, at law or in equity, including the right to receive all proceeds and damages therefrom; and

(j)     any assets relating to any employee benefit plans of Debtor, including any 401(k) plans.


14.     Pursuant to the Asset Purchase Agreement, the Stalking Horse Bidder has agreed to pay to Debtor the sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) (the "Purchase Price"), which is payable at the Closing.


15.     In connection with the Asset Purchase Agreement, the Stalking Horse Bidder made an earnest money deposit in the amount of Sixty Thousand Dollars ($60,000.00) representing five percent (5%) of the Purchase Price (the "Deposit"), which is currently being held in escrow by counsel to Debtor; and will be applied to the Purchase Price at the Closing pursuant to the Asset Purchase Agreement if the Stalking Horse Bidder is the winning bidder at the Auction.

16.    The Stalking Horse Bidder will not be assuming any contracts or liabilities of the Debtor.

17.    Article XI of the Asset Purchase Agreement sets forth the manner in which the Asset Purchase Agreement may be terminated by the Stalking Horse Bidder or the Debtor, in addition to the termination of the Asset Purchase Agreement upon the mutual agreement of the parties or the automatic termination of the Asset Purchase Agreement upon this Court's entry of an order approving the Sale of the Assets to a person or entity other than the Stalking Horse Bidder.

18.    The Stalking Horse Bidder would be able to terminate the Asset Purchase Agreement: (a) if after Stalking Horse Bidder's selection as the winning bidder at the Approval Hearing (i) any condition to close has not been satisfied or if Debtor fails to comply or perform a material covenant of this Agreement; (ii) Stalking Horse Bidder delivers to Debtor notice of such unsatisfied condition or unperformed material covenant; and (iii) Debtor fails to satisfy such condition to closing or comply or perform such material covenant within five (5) days of service of such notice; (b) if there has been a material breach of the Asset Purchase Agreement by Debtor which is not cured within five (5) days after Debtor has been notified in writing of such breach and the intent to terminate the Asset Purchase Agreement pursuant to this Section 11.1(d) of the Asset Purchase Agreement if such breach is not cured; (c) if Debtor discontinues its operations; (d) if the Bidding Procedures have not been approved by this Court on or before May 10, 2011, or if the Approval Hearing has not occurred on or before May 31, 2011, or if the Approval Order has not been entered by this Court on or before June 15, 2011; (e) by Stalking Horse Bidder if the Closing does not occur within the time allowed by Section 3.1 of the Asset Purchase Agreement, provided Stalking Horse Bidder is not in default or breach of this Agreement, and further provided that Stalking Horse Bidder has not taken such action or failed to take such action required under this Agreement, which has been the cause or result in the failure of the Closing to occur on or before such date; or (f) by Stalking Horse Bidder,

in writing, pursuant to Section 10.1(m) of the Asset Purchase Agreement, or if an event or events or circumstances shall have occurred since the date of the Asset Purchase Agreement which, independently or together with any other event, events or circumstances that have occurred or are reasonably likely to occur, have or are reasonably likely to have a Material Adverse Effect (excluding the Petition and any actions of Debtor required by this Motion or the Approval Order).

19.     Debtor can terminate the Asset Purchase Agreement if (a) any condition to close has not been satisfied by Stalking Horse Bidder or if Stalking Horse Bidder fails to comply or perform a material covenant or agreement of the Asset Purchase Agreement; (b) Debtor delivers to Stalking Horse Bidder notice of such unsatisfied condition or unperformed material covenant; and (c) Stalking Horse Bidder fails to satisfy such condition to closing or comply or perform such material covenant within five (5) days of service of such notice

20.     The Asset Purchase Agreement does not require that the Stalking Horse Bidder to hire employees of Debtor after the Closing, however, it does provide that the Stalking Horse Bidder will have the right to hire Debtor's employees after the Closing.

21.     Debtor is hopeful that the Stalking Horse Bidder will hire most of the Debtor's employees and believes it is very likely that the Stalking Horse Bidder will need to do so to retain the business of Debtor's customers.

22.     As a condition of the Asset Purchase Agreement, the Stalking Horse Bidder will enter into a consulting agreement for transition services with Stanwich Partners, LLC for a two (2) year period following the Closing (the "Consulting Agreement"). Currently, Stanwich Partners, LLC provides management services to the Debtor pursuant to a management agreement which provides monthly payments in the amount of Eleven Thousand Two Hundred Fifty Dollars ($11,250.00).

23.     While the principals of Stanwich Partners, LLC are also shareholders and directors of the Debtor, they do not receive any compensation as employees of Debtor.  The Consulting Agreement only provides compensation in the amount of Six Thousand Dollars ($6,000.00) a month to Stanwich Partners, LLC, which is a reduction of nearly fifty percent (50%) of the current compensation.  Nevertheless, the Consulting Agreement is a condition to closing of the Asset Purchase Agreement requested by the Stalking Horse Bidder and, therefore, it is in the best interest of Debtor that the Consulting Agreement be approved by this Court.

24.     Pursuant to the Asset Purchase Agreement, the Stalking Horse Bidder will lease the 135 Property and the 155 Property to continue the business of operations of Debtor at the current facility in Eagle Bridge, New York.

25.     To ensure that the Stalking Horse Bidder has use of the 135 Property following the Closing, Debtor will request that this Court authorize Debtor to enter into a lease with the Stalking Horse Bidder (the "Interim Lease") until such time as Debtor disposes of the 135 Property pursuant to a separate sale motion under Bankruptcy Code § 363. People's Bank has a first mortgage on the 135 Property given by Debtor.

26.     The Asset Purchase Agreement provides that the Stalking Horse Bidder will lease the 135 Property and the 155 Property for a period of two (2) years from the Closing on a triple-net basis with monthly rent in the amount of Three Thousand Five Hundred Dollars ($3,500.00) the ("Leases").

27.     H&B Holding, LLC is the current owner of the 155 Property and the principals of that entity intend to acquire the 135 Property from Debtor consistent with the terms of the Cash Collateral Agreement by assuming the indebtedness secured by the People's Bank mortgage.  The principals of H&B Holding, LLC are also the principals of Stanwich Partners, LLC.

28.     The fact that the Sale and the amount and terms of consideration to be provided by the Stalking Horse Bidder will further be put to a market test by virtue of any higher and better offer Debtor may receive at the Auction, and insures the fairness of the Sale regardless of whether any shareholders, management or employees of the Debtor are ultimately engaged by or enter into leases with the Stalking Horse Bidder following the consummation of the Sale.

29.     Therefore, Debtor respectfully requests that the Court approve the Consulting Agreement, the Interim Lease and the Leases in connection with the Sale and the Approval Order.

30.     Debtor anticipates that the net proceeds of the Sale paid by the Stalking Horse Bidder or such other entity or person submitting the highest or otherwise best offer at the conclusion of the Auction, will be utilized in the manner consistent with the terms of the Cash Collateral Agreement and the Approval Order.

31.     The Assets acquired by the Stalking Horse Bidder do not include the books and records of Debtor and, therefore, Debtor will have continued access to its books and records after the Closing to ensure that it can administer this case and any matters requiring its attention after either the Closing and/or the Approval Order.

32.     The Asset Purchase Agreement does not contemplate the Sale to the Stalking Horse Bidder of potential avoidance actions under Chapter 5 of the Bankruptcy Code and, indeed, such causes of action are Excluded Assets under the Asset Purchase Agreement.

33.     The proposed Approval Order contemplates a finding that the Sale of the Assets shall be free and clear of all liens, and Debtor submits that the Sale satisfies the applicable requirements of Bankruptcy Code §363(f), or otherwise, as being free and clear of any such claims, including any claims relating to successor liability.

34.     For the reasons set forth herein, Debtor requests relief from the 14 day stay imposed by Bankruptcy Rule 6004(h).  As noted above, the Asset Purchase Agreement provides that the Stalking Horse Bidder may terminate the Asset Purchase Agreement if the Closing does not occur on or before June 15, 2011, and therefore, legitimate business reasons justify the Court's approval of an order of the Approval Order which waives the requirement of Bankruptcy Rule 6004(h).

35.     The Stalking Horse Bidder has submitted not only the highest and best offer for the Assets to date, but it has submitted the only offer to date and, in fact, has been the only legitimate suitor of Debtor.   Accordingly, Debtor elected to enter into the Asset Purchase Agreement with the Stalking Horse Bidder on April 28, 2011, subject to higher and better offers at the Auction and the approval of this Court.

36.     However, Debtor is hopeful that there will be other bidders willing to provide higher and better offers for the Assets and, therefore, negotiated, to the extent possible, the bidding procedures set forth herein that will expose the Stalking Horse Bidder's offer to competing bids (each, a "Competing Bid").   Nonetheless, Debtor believed and continues to believe that the bid of the Stalking Horse Bidder embodied in the Asset Purchase Agreement ("Initial Bid") represents the highest and best offer and elected to proceed with its Initial Bid given the financial condition of the Debtor and the need to expedite the Sale.

37.     The Stalking Horse Bidder has consented to subject the Initial Bid to higher and better offers and to participate in the Auction, subject to certain terms and conditions, including provisions, bidding protection in favor of the Stalking Horse Bidder (collectively, the "Bidding Protections").

38.     Debtor believes that the Bidding Protections are appropriate under the circumstances balancing the investment made and to be made by the Stalking Horse Bidder entering into the Asset Purchase Agreement and Debtor's desire to obtain the highest and best offer for the Sale of the Assets.

39.     In the event the Stalking Horse Bidder is not the winning bidder at the Auction due to a third party making a higher or better offer than the Stalking Horse Bidder, then, immediately upon the Closing of the Sale of the Assets to the winning bidder, Debtor would be required to pay to the Stalking Horse Bidder, the sum of One Hundred Thousand Dollars ($100,000.00), which is inclusive of fees and expenses incurred by the Stalking Horse Bidder, legal fees and costs incurred by the Stalking Horse Bidder and a breakup fee for participation as the Stalking Horse Bidder (the "Expense Reimbursement Fee").

40.     The Expense Reimbursement Fee was a requirement of the Stalking Horse Bidder to enter into the Asset Purchase Agreement and, therefore, Debtor executed the Asset Purchase Agreement with the understanding that the Sale is subject to the approval of this Court.

41.     The Expense Reimbursement Fee would be paid as an administrative expense of Debtor under Bankruptcy Code §§ 503(b)(1) and 507(a)(2).

42.     Debtor has proposed that the Bidding Procedures Order be required to contain the Bidding Protections including the requirement that any party submitting a competing bid provide an earnest money deposit in the same percentage as the Stalking Horse Bidder (five percent (5%) of the Purchase Price) paid for the Deposit and otherwise be on terms substantially similar to the terms of the Asset Purchase Agreement.

43.     Additionally, the Asset Purchase Agreement requires that the Bidding Procedures Order sets forth a minimum amount of any competing bid of not less than One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) consisting of the Purchase Price of One Million Two Hundred Thousand Dollars ($1,200,000.00) set forth in the Asset Purchase Agreement, plus One Hundred Thousand Dollars ($100,000.00) (representing the Expense Reimbursement Fee), plus at least Fifty Thousand Dollars ($50,000.00).

## BIDDING PROCEDURES

44.     In order to evaluate properly Competing Bids and ensure an orderly auction process that serves to maximize the value of the Assets, Debtor submits that it is necessary to establish certain uniform sale and bidding procedures (including, without limitation, the Bidding Protections set forth above).  Exhibit A hereto sets forth Debtor's proposed Bidding Procedures in detail and the proposed Bidding Procedures Order is set forth on Exhibit C hereto.

## PROPOSED FORM OF NOTICE OF THE MOTION AND SALE

45.     Debtor requests that this Court schedule a hearing to consider the proposed Bidding Procedures herein for or on about May 10, 2011 (the "Bidding Procedures Hearing"), so that Debtor may proceed with its efforts to sell the assets as a going concern in a timely manner.  The Asset Purchase Agreement provides that the Stalking Horse Bidder can terminate the Asset Purchase Agreement in the event that the Bidding Procedures Order shall not have been entered by this Court on or before May 10, 2011.

46.     Debtor submits that, under the circumstances, approximately five (5) days is more than sufficient to give all parties-in-interest an opportunity to review and consider the requested Initial Relief, and therefore the parties-in-interest will not be prejudiced were this Court to hold the Bidding Procedures Hearing within the requested timeframe.

47.     To ensure the above, Debtor has served, or will hereinafter serve, a copy of this Motion, including all Exhibits hereto, on:  (i) counsel to Debtor, McNamee, Lochner, Titus & Williams, P.C., 677 Broadway, Albany, New York 12207 (Attn:  Peter A. Pastore, Esq.); (ii) counsel to People's Bank (Cooper Erving & Savage LLP, 39 North Pearl Street, Albany, New York 12207 (Attn: Michael A. Kornstein, Esq.); (iii) counsel to the Committee, if any; (iv) the Office of the United States Trustee, 74 Chapel Street, Albany, New York 12207 (Attn:  Kevin J. Purcell, Esq.); and (v) counsel to Strato, Norris, McLaughlin &

Marcus, P.A., 721 Route 202-206, Suite 200 (P.O. Box 5933), Bridgewater, New Jersey 08807 (Attn: Mo Bauer, Esq.).

48.    Debtor also submits that its proposed timeframe for the Auction and the Sale Hearing, request to be scheduled for on or before May 31 and June 6 respectively, would give all potential competing bidders ample time to review the assets and the Asset Purchase Agreement and to formulate a Competing Bid (and would also provide all parties-in-interest with sufficient time to object to any of the proposed transactions). These dates are also consistent with the Asset Purchase Agreement which requires that the deadline for the submission of competing bids be no later than May 25, 2011, that the Auction be held no later than May 31, 2011 and that this Court enter the Approval Order no later than June 15, 2011.

49.    Debtor also believes that any delay beyond the proposed period would severely impair its ability to sell the Assets as a going concern given that Debtor will be unable to fund ongoing operations into June of 2011.

50.    Additionally, Debtor believes that any extended auction period would serve little or no purpose in this case, given that Debtor has received no other offer to purchase the assets, despite the knowledge of Debtor's financial condition, and the availability of a buyer in the same industry. Moreover, Debtor has already spent a great deal of time and expense engaging in active negotiations with the Stalking Horse Bidder which Debtor strongly believes will maximize the value of the estate.

51.    Finally, all parties-in-interest will have the opportunity to file objections to the various relief requested in the Motion, despite the fact that the ability of Debtor to sell the Assets will maximize the value of the estate, which is the <u>only</u> avenue for Debtor for the estate to yield any proceeds to the parties-in-interest.

52. Pursuant to Bankruptcy Rule 2002(m), bankruptcy courts are empowered to enter an order "designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules."

53. To ensure that adequate notice of the Sale, the Auction and the Sale Hearing as provided, Debtor would serve the notice of hearing to approve the sale of substantially all assets of Debtor in the form annexed hereto as Exhibit D (the "Auction and Hearing Notice") establishing respective dates, times and places of the Auction and Sale Hearing following the entry of the bidding procedures order, by first class mail, postage prepaid, to (a) all of the parties identified for service of the bidding procedures, and (b) all other parties-in-interest in this case known to Debtor as of the Petition Date.

54. Debtor shall also advertise the Auction and Sale Hearing on-line with The Wall Street Journal in the General Classified/Mart (www.wsjmediakit.com/classified/mart/) and Railway Age, a national trade magazine (www.railwayage.com/advertising/) in a manner that is cost effective and reasonable under the circumstances. Debtor believes the publication of the Sale in a national business journal and national trade journal will provide a reasonable opportunity for the submission of competing bids to this Court.

55. Debtor submits that the foregoing notice would constitute good and sufficient notice of the Sale, the Auction, the Sale Hearing, and the transactions set forth in the Asset Purchase Agreement.

56. Based on the foregoing, Debtor requests that this Court approve the requested dates set forth herein.

## THE PROPOSED SALE IS IN THE BEST INTERESTS OF DEBTOR'S ESTATE AND ITS CREDITORS

57.     Debtor believes that the Sale according to the Bidding Procedures and the terms and conditions of the Asset Purchase Agreement will enable it to obtain the greatest value for the assets and to maximize the value of its estate, which is in the best interest of Debtor, its creditors and all other parties-in-interest.

A.     STANDARD.

58.     It is well-settled that the paramount goal for any proposed sale of property of a bankruptcy estate is to maximize the proceeds received and that the duty of Debtor with respect to such sale is to obtain the highest price or overall greatest benefit for the estate and the creditors and parties-in-interest thereof.     See Integrated Res., 147 B.R. 650, 659 (S.D.N.Y. 1992)

59.     Bankruptcy Code §363(b) authorizes Debtor to sell assets of the estate in the ordinary course of business in conjunction with Bankruptcy Rule 6004.

60.     The 2nd Circuit has held that approval of the proposed sale property pursuant to Bankruptcy Code §363(b) is appropriate so long as the transaction is consistent with the sound business judgment of Debtor.     (See Comm. of Equity Security Holders v. Lionel Corp., (In re Lionel Corp.), 722 F.2d 1063 (2nd Cir. 1983).

61.     Additionally, the 9th Circuit has noted that the Bankruptcy Court should consider the following factors in connection with the proposed transaction: (1) the consideration to be paid, (2) the financial condition and needs of the estate, (3) the qualifications of the buyer, and (4) whether a risk exists that the assets to be sold by the estate will decline in value if the assets go unsold. (Walter v. Sunwest Bank) (In re Walter), 83 B.R. 14, 19-20 (9th Cir. 1988) (citing In re Lionel, 722 F.2d at 1063).

62.     The sale of the Assets pursuant to the Asset Purchase Agreement is supported by Debtor's sound business judgment and any ongoing delay in Debtor's ability to

consummate the Sale threatens its ability to sustain business operations and sell the Assets as a going concern.

63.     The Sale is supported by Debtor's primary secured lender, People's Bank, pursuant to the Cash Collateral Agreement which has agreed to accept $1,000,000.00 as payment in full for the obligations owed to it under the business loans of Debtor from the Purchase Price pursuant to the Asset Purchase Agreement ($1,200,000.00). Therefore, the Sale will provide sums of money to be distributed to the holders of general unsecured claims against Debtor.

64.     Again, Debtor is concerned that it cannot sustain the operation of its business into June of 2011, and if the Sale is not consummated, the estate, the creditors and parties-in-interest will potentially yield no benefit or sale proceeds in connection with a bankruptcy of Debtor – particularly given the sums owed to People's Bank.

65.     The Stalking Horse Bidder, Strato Transit Components, LLC, is a competitor of Debtor in its industry and has the ability to acquire the assets for continued production at Debtor's facility in Eagle Bridge, New York and to retain substantially all of Debtor's employees following the Sale.

66.     The Auction and Debtor's duty to consider higher and better offers will confirm whether Debtor has negotiated the highest and best offer for the Assets and whether the Sale should move forward. However, as of the date of this Motion, there is no evidence to suggest otherwise and the Asset Purchase Agreement and the filing of the Petition represent the manifestation of Debtor's sound business judgment and its attempt to yield the maximum value of the estate.

B.     THE BIDDING PROCEDURES WILL MAXIMIZE THE VALUE OF THE ASSETS AND DEBTOR'S ESTATE.

67. Pursuant to Bankruptcy Rule 6004(f)(1), sales of the assets of a debtor outside of the ordinary course may be conducted by private or public auction. Additionally, pursuant to Bankruptcy Rule 2002(a)(2), this Court may, provide shown, shorten or direct another method of notice giving the general 21 day mailing period for the proposed sale of the assets of the estate other than in the ordinary course of business, provided the notice of proposed sale includes: (a) the time and place of any public sale, (b) the terms and conditions of any private sale, (c) the time fixed or filing objections, and (d) a sufficient description of the assets to be sold. See Bankruptcy Rule 2002(c)(1).

68. Debtor submits that the notice, procedures and rules set forth in this Motion, as well as the requested dates set for the Bidding Procedures Hearing, the Auction and the Sale Hearing satisfy the timely notice required by the Bankruptcy Rules and Bankruptcy Code §363(b), constitute good and sufficient notice and that no other further notice of the Sale, the Auction, the Sale Hearing or any of the transactions reference in this Motion or the Asset Purchase Agreement is required.

C.    THE SALE WILL BE CONSUMMATED IN GOOD FAITH.

69. Bankruptcy Code §363(n) provides that

> "the reversal or modification on appeal of an authorization under [Bankruptcy Code §363(b) or (c)] of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased such property in good faith whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

70. The terms of the Asset Purchase Agreement were negotiated at arms length and in good faith. Upon information and belief, the Stalking Horse Bidder is not an insider,

nor is it affiliated in any way with Debtor. Also, Debtor has fully disclosed and requested that this Court approve the terms and conditions of the Sale pursuant to the Asset Purchase Agreement and shall provide notice as set forth herein and as directed by this Court.

71. The Stalking Horse Bidder and Debtor each were represented by separate experienced professionals helping to ensure that the Sale process has been fair to date and that the Asset Purchase Agreement was entered into at arms length and in good faith.

72. Therefore, Debtor requests that this Court determine that the Stalking Horse Bidder has negotiated and acted at all times in good faith and, as a result, be entitled to the protection afforded to a good faith purchaser under Bankruptcy Code §363(n).

D. THE PROPOSED SALE SATISFIES THE REQUIREMENTS OF BANKRUPTCY CODE §363(f).

73. At present time, the Assets are subject to a first position security interest of Amerisource Funding, Inc. ("Amerisource") and a second position security interest, as noted above, of People's Bank.

74. Amerisource factored certain accounts receivable of Debtor pursuant to the terms and conditions of the purchase and sale agreement entered into with Debtor. However, on the Petition Date, Debtor has no outstanding obligations to Amerisource and, as of the Petition Date, Amerisource has not purchased any of Debtor's outstanding accounts receivable.

75. Additionally, this Court has been asked to approve the termination of the security interest of Amerisource pursuant to that certain Motion of Debtor-In-Possession for Interim Order (i) authorizing continued use of cash collateral, (ii) providing adequate protection for secured creditor People's Bank, and (iii) granting certain related relief.

76.     In order to facilitate the Sale of the Assets, Debtor has obtained the consent of People's Bank pursuant to the Cash Collateral Agreement for the termination of its security interest in the Assets subject to the Sale.

77.     Therefore, Debtor requests authorization of this Court to sell all of the Assets free and clear of any all liens which may be asserted (including any claims for successor liability).

78.     In accordance with Bankruptcy Code §363(f), a debtor may sell assets of the estate pursuant to Bankruptcy Code §363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

1.     Applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

2.     The [lienholder or claimholder] consent;

3.     Such interest is a lien and the price at which such property is to be sold is greater that the aggregate value of all liens on such property;

4.     such interest is in bona fide dispute; or

5.     [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See Folger Adam Sec. Inc. v. De Matties/McGregor JV, 209 F.3d 252, 257 (3rd Cir. 2000).

79.     Based on the Cash Collateral Agreement, the relevant lienholder (i.e. People's Bank) has consented to the Sale of the Assets pursuant to the terms of the Asset Purchase Agreement and, therefore, the terms and conditions of Bankruptcy Code §363(b) have been satisfied.

80. Debtor strongly believes that the Sale provides the most effective, efficient and time-sensitive approach to realizing proceeds for among other things, significant repayment of the amounts due People's Bank.

81. Based on the foregoing, Debtor submits that at least one (if not more) of the subsections of Bankruptcy Code §363(f) will be satisfied here, and this Court should approve the Sale of the Assets free and clean of any and all liens and encumbrances.

E.    CAUSE EXISTS TO APPROVE THE BIDDING PROTECTIONS.

82. Debtor has employed the Bidding Protections in order to encourage bids for the acquisition of the Assets at the highest and best price.

83. In connection with the negotiation of the Asset Purchase Agreement, the Stalking Horse Bidder proposed various breakup fees and expense reimbursement provisions. As a condition of the Asset Purchase Agreement, Debtor accepted the Expense Reimbursement Fee to the Stalking Horse Bidder in the amount of $100,000.00 as set forth in Article XII of the Asset Purchase Agreement. The Asset Purchase Agreement and the Expense Reimbursement Fee therein, were executed upon the sound business judgment of Debtor in furtherance of its duty and goal to maximize the value of the Assets and the estate for distribution to its creditors and parties-in-interest.

84. Debtor believes that, in general, various breakup fees can have the effect of promoting more competitive bidding by inducing concrete bids and adding value to the estate by establishing the true value of the assets.

85. The Stalking Horse Bidder has to date made the highest definitive offer for the Assets which is contingent upon this Court's approval of not only the Asset Purchase Agreement and the Bidding Procedures, but also the Expense Reimbursement Fee. The

Stalking Horse Bidder is unwilling to hold open its offer to purchase the Assets unless the Bidding Procedures and the Expense Reimbursement Fee are approved.

86.     The Stalking Horse Bidder would not have entered into the Asset Purchase Agreement without the availability of the Bidding Procedures (and the Bidding Protections therein) and the Expense Reimbursement Fee.  Therefore, both have induced a bid for the acquisition of the Assets that would not have been made which is currently the only avenue for Debtor to fund the estate for distributions to its creditors and parties-in-interest.

87.     Based upon the foregoing, the Bidding Procedures (and the Bidding Protections therein) and the Expense Reimbursement Fee should be approved by this Court.

88.     **REQUEST FOR RELIEF**
        **UNDER BANKRUPCTY RULE 6004(h) AND 6006(d)**

89.     Bankruptcy Rule 6004(h) provides, in substance, that an order authorizing the sale of a debtor's property is stayed for a period of 14 days after entry of the order unless the court orders otherwise.

90.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented, which has been interpreted by the courts to permit the period for the stay to be reduced to the amount of time actually necessary to file such an appeal.

91.     As noted throughout this Motion, time is of the essence with respect to Debtor's ability to consummate the sale of its Assets which means that the assets are at significant risk of losing value without prompt approval of the Asset Purchase Agreement and an expedited closing of the Sale.

92.     These time periods are further informed by the ability of the Stalking Horse Bidder to terminate the Asset Purchase Agreement if the Closing does not occur by the close of business on June 15, 2011.

93.     Therefore, an expeditious closing of the Sale is of critical importance and Debtor requests that this Court waive the 14 day stay period under Bankruptcy Rule 6004(h) and 6006(d).

## NO PREVIOUS APPLICATION

94.     No previous application for the relief sought herein has been made to this Court or any other court.

95.     **WHEREFORE**, Debtor respectfully requests that this Court enters orders, substantially in the form attached hereto, granting the relief requested herein and as such further relief, as may be just and proper under the circumstances.

Dated:  May 4, 2011
            Albany, New York

Respectfully submitted,

Peter A. Pastore, Esq.
McNamee, Lochner, Titus & Williams, P.C.
Attorneys for Debtor & Debtor-in-Possession
677 Broadway, Suite 500
Albany, New York 12207
Tel. No. 518-447-3246, Fax No. 518-867-4746

**BIDDING PROCEDURES ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:                                          Chapter 11

     EAGLE BRIDGE MACHINE & TOOL, INC.,          Case No. _____

                           Debtor.

---

**ORDER:  (1) APPROVING FORM OF "STALKING HORSE" ASSET PURCHASE
AGREEMENT WITH STRATO TRANSIT COMPONENTS, LLC FOR THE SALE
OF SUBSTANTIALLY ALL ASSETS OF DEBTOR; (2) APPROVING BIDDING
PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3)
SCHEDULING (a) AN AUCTION SALE AND (b) A HEARING TO CONSIDER
APPROVING THE HIGHEST AND BEST OFFER; AND (4) GRANTING
RELATED RELIEF**

Upon the motion, dated May 3, 2011(the "Motion")[1] of Eagle Bridge Machine &

Tool, Inc., the debtor and debtor-in-possession in the above-captioned bankruptcy case (the

"Debtor"), pursuant to sections 105(a), 363 and 365 of chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (I) a procedures order

(the "Bidding Procedures Order"), inter alia, (a) approving certain bidding procedures (the

"Bidding Procedures") and scheduling a competitive auction (the "Auction") in connection

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

with the sale of substantially all assets of Debtor excluding the Debtor's ownership interest in real estate known as 135 State Route 67, Eagle Bridge, New York, Debtor's leasehold interest in real estate known as 155 State Route 67, Eagle Bridge, New York and the Excluded Assets, as that term is defined in the Asset Purchase Agreement ("APA") (the "Assets"); (b) authorizing the Debtor to enter into the APA with Strato Transit Components, LLC ("Strato" or the "Stalking Horse Bidder") in connection therewith; (c) authorizing the Debtor to offer certain bid protections to the Stalking Horse Bidder; (d) scheduling a final sale hearing (the "Sale Hearing") to consider entry of an order approving the sale of the Assets, and approving the form and manner of notice of the Sale Hearing (the "Sale Notice"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other notice need be provided; and a hearing on the procedural relief requested in the Motion having been held before the Court (the "Bid Procedures Hearing"); and upon the record of the Bid Procedures Hearing; and such relief being in the best interest of the Debtor, its estate and creditors; and any objections to the procedural relief requested in the Motion having been resolved, withdrawn or otherwise overruled by this Court; and after due deliberation, and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N) and (O). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the procedural relief requested in the Motion, including approval of: (i) the Bidding Procedures; (ii) the Debtor's offer to the Stalking Horse Bidder of an ExpenseReimbursement/Break-Up fee of $100,000.00 (the "Expense Reimbursement"); and (iii) the form and manner of notice of the Auction and Sale.

C.     The proposed notice of the sale of the Assets and the Bidding Procedures, as set forth in the Motion, is good, appropriate, adequate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice is required for the sale of the Assets to the Successful Bidder.

D.     The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent Sale Hearing to consider granting other relief requested in the Motion, including approval of the sale of the Assets to the Successful Bidder free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

E.     Authorizing the Debtor to offer the Expense Reimbursement to induce bids at the Auction represents a sound exercise of the Debtor's business judgment and will allow the Debtor to maximize the value of its assets.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.     The procedural relief requested in the Motion is approved to the extent provided herein.

2.     The Bidding Procedures, in a form substantially similar to the procedures attached hereto as **Exhibit 1**, are approved in all respects.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.     Allowance and payment of the Expense Reimbursement under the circumstances set forth and in accordance with the terms of the APA is approved, and the Stalking Horse Bidder shall be entitled to the Expense Reimbursement to the extent set forth in the APA.

4.     If payment of the Expense Reimbursement, or the Stalking Horse Bidder's entitlement to return of the Deposit, is triggered under the terms of the APA, the Debtor is authorized, without further order of this Court, to (i) pay to the Stalking Horse Bidder the Expense Reimbursement in the manner and upon the terms set forth in the APA, and (ii) release the Deposit to the Stalking Horse Bidder.  If earned pursuant to the terms of the APA, the Expense Reimbursement shall constitute an allowed administrative expense claim arising in this chapter 11 case under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

5.     The form of the Sale Notice, in a form substantially similar to the notice attached hereto as **Exhibit 2,** is approved.  Service of the Sale Notice in accordance with

the Motion shall be deemed appropriate, adequate and sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice shall be required for the sale of the Assets to the Successful Bidder.

6.      If bids are submitted in accordance with the Bidding Procedures, the Auction shall be held at **10:00 a.m. (Eastern Time) on May _____, 2011,** at the United States Bankruptcy Court, Northern District of New York, James T. Foley U.S. Courthouse, Broadway, 3rd Floor, Albany, New York 12207 or such other place as the Debtor may designate at least one (1) day prior to the Auction.

7.      Each Qualified Bidder at the Auction will be required to confirm that it has not engaged in any collusion with respect to its bidding on the Assets.

8.      The Auction will be conducted openly and all creditors of the Debtors are permitted to attend.

9.      Bidding at the Auction may be transcribed by a court reporter.

10.      The Sale Hearing to consider approval of the Debtors' entry into and consummation of a transaction with a Successful Bidder shall be held on **May _____, 2011 at 10:30 a.m. (Eastern Time),** unless rescheduled to a later date in accordance with the Bidding Procedures.

11.      Objections to the sale of the Assets to the Successful Bidder shall be in writing, shall state the basis of such objection with specificity and shall be filed with the Court, and served so as to be received on or before **May ___, 2011 at 5:00 p.m. (Eastern Time)** on: (i) counsel to the Debtor, McNamee, Lochner, Titus & Williams, P.C.,

677 Broadway, Albany, New York 12207 (Attn: Peter A. Pastore, Esq.); (ii) counsel to People's Bank (Cooper Erving & Savage LLP, 39 North Pearl Street, Albany, New York 12207 (Attn: Michael A. Kornstein, Esq.); (iii) counsel to the Committee, if any; (iv) the Office of the United States Trustee, 74 Chapel Street, Albany, New York 12207 (Attn: Kevin J. Purcell, Esq.); and (v) counsel to Strato. Norris, McLaughlin & Marcus, P.A., 721 Route 202-206, Suite 200 (P.O. Box 5933), Bridgewater, New Jersey 08807 (Attn: Mo Bauer, Esq.)

12. Copies of this Order and all pleadings submitted in support of the Motion shall be served via overnight delivery on the day hereof upon the following parties: (a) the Office of the United States Trustee for the Northern District of New York; (b) counsel to People's Bank; (c) counsel for the Committee, if any; (d) all parties that have filed a notice of appearance; (e) the Internal Revenue Service and the Division of Taxation for New York State; and (g) all parties the Debtor believes may be interested in bidding on the Assets. Such service shall constitute good and sufficient notice of the Motion under applicable Federal and Local Rules of Bankruptcy Procedure and under the circumstances set forth in the Motion and the related documents and evidence presented at the hearing on the Bidding Procedures Motion. A copy of the Notice annexed as **Exhibit "2"** hereto shall be served by U.S. mail on all known creditors of the Debtor within one (1) day after entry of this Order.

13. Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h) and 6006(d), this Order shall not be stayed for 10 days after the entry hereof and shall be effective immediately upon signature hereof.

14.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation of this Order.

Dated: May ___, 2011
       Albany, New York


                                    _____
                                    THE HONORABLE ROBERT E. LITTLEFIELD, JR.
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE