UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                Case No. 11-11434

    Eagle Bridge Machine & Tool, Inc.,                Chapter 11

          Debtor.

STATE OF NEW YORK   )
                             ) ss.:
COUNTY OF ALBANY    )

**DECLARATION OF JOHN E. SORON IN SUPPORT OF MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR (I) ENTRY OF AN INTERIM ORDER (A) AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND (B) PROVIDING ADEQUATE PROTECTION FOR SECURED CREDITOR PEOPLE'S BANK AND (C) GRANTING CERTAIN RELATED RELIEF; (II) ENTRY OF AN ORDER (A) APPROVING FORM OF "STALKING HORSE" ASSET PURCHASE AGREEMENT WITH STRATO TRANSIT COMPONENTS, LLC FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR; (B) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (C) SCHEDULING (1) AN AUCTION SALE AND (2) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; AND (D) GRANTING RELATED RELIEF; (III) FOR AN ORDER APPROVING THE SALE OF DEBTOR'S REAL ESTATE AND OTHER RELATED RELIEF; (IV) ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO PAY PREPETITION PAYROLL AND PAYROLL TAXES, WITHHOLDINGS AND REIMBURSABLE EXPENSES; (B) AUTHORIZING THE DEBTOR TO CONTINUE EMPLOYEE BENEFIT PROGRAMS ON A POSTPETITION BASIS; AND (C) AUTHORIZING ALL FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS; AND (V) FOR ENTRY OF AN ORDER TO ASSUME MANAGEMENT CONTRACT WITH STANWICH PARTNERS**

JOHN E. SORON, being duly sworn, deposes and says:

1. I am the President of Eagle Bridge Machine & Tool, Inc., a New York business corporation ("Debtor").

{M0432566.1}

2. Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in this Court on even date herewith.

3. Debtor is a precision, production machining business based in Eagle Bridge, New York. The company specializes in machining medium sized to heavy metal castings used in a variety of industries, including mass transportation rail trains and cars, defense, oil and gas drilling and other commercial markets.

4. Debtor's owns and operates real estate known as 135 State Road 67, Eagle Bridge, New York (the "135 Property") and leases real estate known as 155 State Road 67, Eagle Bridge, New York (the "155 Property") in connection the operation of its business.

5. Debtor employs eighteen (18) people (the "Employees") and pays its Employees on Thursdays, one week in arrears. The average weekly payroll for Employees is approximately $20,000.00. In addition, Debtor pays and incurs a number of obligations related to its Employee, such as federal and state withholding taxes and other withheld amounts (including the Employees' share of insurance premiums, taxes and 401(k) contributions), health benefits, workers' compensation benefits, vacation time, life insurance, short- and long term disability coverage, various reimbursable expenses and other benefits that Debtor has historically provided in the ordinary course of business (collectively, and as more fully described herein, the "Employee Obligations").

6. Just as Debtor depends on the Employees for the day-to-day administration and operation of its business, the Employees depend on Debtor. Indeed, the Employees

rely exclusively on payment of the Employee Obligations to pay their daily living expenses and, accordingly, need to be paid.

7.  Debtor financed its prepetition business activities with various debt instruments and security agreements with People's Bank, the lone secured lender, which bank holds first liens and security interests in all of Debtor's assets. Accordingly, all cash generated by Debtor post-petition is subject to People's Bank perfected lien.

8.  In March of 2011, People's Bank exercised a set-off against Debtor's bank account, in the sum of $54,818.61 ("Set-Off Funds") maintained at People's Bank. Thereafter, Debtor and People's Bank engaged in intensive discussions and negotiations regarding the restoration of the Set-Off Funds to Debtor's bank account.

9.  Those discussions culminated in a prepetition cash collateral agreement ("Prepetition Cash Collateral Agreement") which Debtor and People's Bank agreed would govern their relationship for the period before the Petition Date and post petition, subject only to this Court's approval. The driving factor for People's Bank entering into the Prepetition Cash Collateral Agreement was Debtor's commitment to selling its business and maximize the value of the assets to repay its creditors.

10. It is imperative that Debtor has the use of this cash collateral post-petition to fund on-going operations and continue to pay the Employee Obligations

11. Beginning in late 2010, Debtor faced declining sale volumes and experienced unforeseen project delays which caused the deterioration of Debtor's financial performance. Pre-petition a great effort was exerted by Debtor to locate a purchaser of its business.

12. After contact with several different entities, Debtor was successful in initiating serious discussions for the sale of its business to a New Jersey manufacturing company in Debtor's industry.

13. After extensive negotiations, on April 28, 2011 Debtor entered into an Asset Purchase Agreement with Strato Transit Components, LLC (the "Asset Purchase Agreement"), subject to the approval of this Bankruptcy Court.

14. As part of the Asset Purchase Agreement, Debtor is selling the 135 Property to a third party and is being released from its current lease at the 155 Property.

15. Stanwich Partners, LLC ("Stanwich") has provided management advisory services to Debtor since July 1, 2004 pursuant to a Management Agreement and has continued to provide management advisory services to Debtor, including substantial managerial and consulting assistance to Debtor pending the sale of Debtor's business to Strato Transit Components, LLC, pursuant to a month-to-month extension of the Management Agreement. Debtor supports the continued retention of Stanwich until Debtor's business is sold or liquidated.

16. The proposed sale to Strato Transit Components, LLC represents an exercise of the Debtor's sound business judgment because (a) the purchase price, and other terms of

the Asset Purchase Agreement, are fair and reasonable under the circumstances; (b) the parties proceeded with the utmost good faith in negotiating and entering into the Asset Purchase Agreement; and (c) the Asset Purchase Agreement is subject to Bidding Procedures designed to ensure that the highest or otherwise best offer has been or will be received.

17. In sum, the proposed sale is the only avenue by which the Debtor can, with any degree of certainty, maximize and preserve the value of EBM. The proposed Asset Purchase Agreement is the culmination of extensive, arm's-length, good faith and hard-nosed negotiations, and should without reservation be approved in all respects, subject to the Bidding Procedures set forth in the Sale Motion.

John E. Soron, President
Eagle Bridge Machine & Tool, Inc.

Subscribed and sworn to before me
This 4th day of May, 2011.

Notary Public

TRACEY I. CHANDLER
Notary Public, State of New York
Saratoga County No. 01CH5051874
My Commission Expires Nov. 18, 2013