UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Case No. 11-11434

Eagle Bridge Machine & Tool, Inc.,  Chapter 11

Debtor.

## DECLARATION OF PETER A. PASTORE REGARDING
## FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

PETER A. PASTORE, being duly sworn, deposes and says:

1. I am the attorney for the above-referenced Debtor.

2. Attached hereto is a true and accurate copy of the First Amendment to Asset Purchase Agreement.

_____
Peter A. Pastore

Subscribed and sworn to before me
this 25th day of May, 2011.

_____
Notary Public

KATHLEEN O'NEIL
Notary Public, State of New York
No. 4641409
Qualified in Albany County
Commission Expires Dec. 31, 20__

# FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT (hereinafter "Agreement") is made this 11th day of May, 2011, by and between Strato Transit Components, LLC, a New Jersey limited liability company, with an address at 100 New England Avenue, Piscataway, New Jersey 08854 (hereinafter "Buyer"); and Eagle Bridge Machine & Tool, Inc., a New York business corporation, having a place of business at 135 NY Route 67, Eagle Bridge, New York 12057 (hereinafter "Seller"). Seller and Buyer may each be individually referred to in this Agreement as a "Party" and collectively, as the "Parties".

WHEREAS, the Parties desire to make changes to the terms and conditions set forth in the Asset Purchase Agreement dated April 28, 2011 by and among the parties hereto (the "APA").

NOW, THEREFORE, in consideration of the premises and the mutual covenants and condition contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. DEFINITIONS. Capitalized terms not otherwise defined herein shall have the meaning set forth in the APA.

2. SCHEDULE 2.3. Schedule 2.3 of the APA is hereby is hereby deleted in its entirety and replaced with the following:

## SCHEDULE 2.3

### Purchase Price Allocation

| | | |
|---|---|---|
| A. | Inventory | $345,000.00 |
| B. | Tangible Personal Property (Furniture, fixtures, etc.) | $1,000.00 |
| C. | Manufacturing Equipment, Tools and Supplies | $454,000.00 |
| D. | Intangibles | $400,000.00 |
| | TOTAL | $1,200,000.00 |

3. BANKRUPTCY COURT APPROVAL. Article IX of the APA is hereby deleted in its entirety and replaced with the following:

## "ARTICLE IX
## BANKRUPTCY COURT APPROVAL

9.1 Bankruptcy Court Approval of Sale. Promptly following the date of the Bankruptcy Filing (and in no event later than five (5) business days thereafter), Seller shall file a motion with the Bankruptcy Court (the "Sale Motion") requesting entry of an order, in form and substance reasonably satisfactory to Buyer and Seller (the "Sale Order"), said Sale Motion, and the service thereof, to

{M0435379.1}

be in form, manner and content reasonably satisfactory to Buyer. Said Sale Order shall (a) approve the sale of the Acquired Assets to Buyer on the terms and conditions set forth in this Agreement and authorize Seller to proceed with this transaction, subject to any higher or better bids from a "Competing Bidder" on an "Alternate Transaction" pursuant to a "Competing Bid" (as those terms are defined herein); (b) include a specific finding that Buyer is a good faith Buyer of the Acquired Assets; (c) state that the sale of the Acquired Assets to Buyer shall be free and clear of all liens, claims, interests and encumbrances of any nature whatsoever, and (d) provide for a waiver of the stays contemplated by Bankruptcy Rules 6004(g) and 6006(d). The Sale Motion shall also request that the Bankruptcy Court approve and utilize the following procedures to be used in connection with any bidding for the Acquired Assets at the Approval Hearing (as defined below):

(a)  Seller shall not entertain any bid for the Acquired Assets (other than the bid made by Buyer pursuant to this Agreement) unless such other bidder and bid complies with all of the following requirements that such bid shall be:

(i)  delivered to counsel for Seller, with a copy delivered to Buyer (at the address for notices provided herein), at least two (2) business days prior to the date of the Approval Hearing;

(ii)  in form and substance similar to this Agreement and contain all of the material transactions and agreements contemplated by this Agreement;

(iii)  not less than the sum of (A) the Purchase Price offered by Buyer under the terms of this Agreement, plus (B) the Expense Reimbursement Fee (as defined below) plus (C) $10,000;

(iv)  made by a bidder that provides satisfactory evidence to Seller, that it is (A) financially able to consummate the transaction contemplated by such bid and (B) able to consummate the transaction on the date and on the terms contemplated by this Agreement;

(v)  accompanied by a deposit by bank check or wire transfer equal to or greater than $60,000;

(b)  providing that after any initial overbid made pursuant to clause (a), all further overbids must be made in an open oral auction held pursuant to clause (c), with bidding in increments of at least $10,000; and

(c)  providing that if Seller shall receive a bona fide offer from a person other than Buyer (the "Competing Bidder") that complies strictly with all of the requirements of this Section 9.1 (the "Competing Bid"), then if such sale to the Competing Bidder (an "Alternative Transaction") shall not have been consummated within two (2) business days of the termination of the fourteen (14)-day period for appeals with respect to the order approving such Competing Bid, provided that no stay pending appeal has been entered during such fourteen

{M0435379.1}

(14)-day period, such Competing Bid shall be considered void and shall be rejected, and (subject to satisfaction of the closing conditions described in Article 10 hereof) in the event that there is no other higher Competing Bid representing an Alternate Transaction from a Competing Bidder that is greater than the Purchase Price, Seller shall consummate the transaction with Buyer pursuant to and on the terms of this Agreement, including the Purchase Price set forth herein, as soon as reasonably possible.

(d) Seller shall set, or ask the Court to set, the deadline for submission of Competing Bids for a date that is no later than May 25, 2011, and the hearing (the "Approval Hearing") to approve this Agreement and the sale of the Acquired Assets to Buyer for a date that is no later than May 31, 2011."

4. EXPENSE REIMBURSEMENT FEE. Article XII of the APA is hereby deleted in its entirety and replaced with the following:

"ARTICLE XII
EXPENSE REIMBURSEMENT FEE

12.1 Expense Reimbursement Fee. In the event that the Bankruptcy Court authorizes an Alternative Transaction prior to any termination of this Agreement by either Party (which transaction may be due to a third party making a higher or better offer than Buyer's offer), then, immediately upon the closing of an Alternative Transaction, Seller will pay to Buyer the sum of Sixty Thousand Dollars ($60,000.00) which amount is inclusive of any (a) fees and expenses incurred by Buyer in connection with this Agreement or any of the transactions contemplated hereunder, (b) the preparation and negotiation of this Agreement and related documents, (c) legal fees and costs incurred by Buyer in connection with the collection of these amounts, and (d) a break-up fee for participating as the "stalking horse bidder" (collectively, the "Expense Reimbursement Fee"). Buyer shall not be obligated to document any of its fees or expenses or to establish that its actual fees and expenses are or will be equal to the Expense Reimbursement Fee or any other minimum amount. The Expense Reimbursement Fee shall be paid in cash from the proceeds of and concurrent with the closing of any Alternative Transaction or as otherwise ordered by the Bankruptcy Court."

5. APA. All other terms of the APA shall continue as set forth in the APA.

6. GOVERNING LAW. This Agreement will be construed in accordance with and governed by the laws of the State of New York without reference to its choice of law provisions, except as to those matters that must be governed by the Bankruptcy Codes.

7. CONSENT TO JURISDICTION.

(a) THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT

OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, ANY RELATED AGREEMENTS, OR INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

(b) Service of any process, summons, notice or document by U.S. registered mail to a Party's address set forth in Section 15.4 of the APA will be effective service process of any action, suit or proceeding with respect to any matter to which it has submitted to jurisdiction as set forth above. Buyer and Seller irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. If a court finds that subject matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Northern District of New York, or if such court will not have jurisdiction, then to the appropriate courts of the State of New York sitting in the City of Albany.

8. SEVERABILITY. Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction as to such jurisdiction, will be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

9. INTERPRETATION. This Agreement has been negotiated at arm's length and between parties and their representatives sophisticated and knowledgeable in the matters dealt with in this Agreement, and legal counsel has represented Buyer and Seller. Accordingly, each provision of this Agreement will be interpreted as though the parties equally participated in its drafting and no rule of law or legal decision that would require any ambiguity to be construed against the Party that drafted this Agreement will apply. This Agreement will be interpreted in a reasonable manner to effect the purposes of this Agreement.

10. ATTORNEY FEES. Except as otherwise provided herein, if any dispute between Buyer and Seller results in litigation, the prevailing party in such dispute will be entitled to recover from the other party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including reasonable attorney fees and expenses of attorneys and accountants at trial and on any appeal.

11. NO THIRD PARTY BENEFICIARIES. This Agreement does not confer upon any Person other than the Parties any rights or remedies hereunder.

12. COUNTERPARTS. This Agreement may be executed by facsimile signature and in any number of counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this First Amendment to Asset Purchase Agreement as of the day and year first above written.

BUYER                       STRATO TRANSIT COMPONENTS, LLC

By:   Strato, Inc., Manager

By: _____
    Michael T. Corridon
    Chief Financial Officer

SELLER                      EAGLE BRIDGE MACHINE & TOOL, INC.

By: _____
    John E. Soron
    President and CEO

{M0435379.1}